IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DION PAUL BUTLER**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06 C 6207 ) |
| **ILLINOIS DEPARTMENT OF TRANSPORTATION**, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a highway maintainer diagnosed with post-traumatic stress disorder ("PTSD"), sued his former employer, The Illinois Department of Transportation ("IDOT"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (count I). Plaintiff fails in large part to respond to IDOT's pending motion for summary judgment with citation to authority or properly supported and developed arguments. *See Fabriko Acq. Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008)(explaining that it is not the court's job to develop arguments for the parties); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008)(finding inadequately developed arguments without substantive legal authority waived). Nevertheless, I have done my best to analyze plaintiff's claims to ensure that IDOT has carried its burden. For the following reasons, summary judgment is granted.

I.

Plaintiff was employed by IDOT as a highway maintainer from September 1999 until he was terminated in April 2004. Plaintiff was initially hired by IDOT to work in its Night Maintenance yard. Highway maintainers stationed in the Night Maintenance yard work between the hours of 7:30 p.m. and 6:00 a.m., performing duties that include patching potholes and picking up large debris off the highway. While performing routine Night Maintenance yard work, plaintiff was involved in several automobile accidents in which third-parties struck his IDOT vehicle. As a result of his last accident, which occurred in May of 2003, plaintiff sustained various physical injuries and was diagnosed with PTSD. He received workers' compensation benefits and did not return to work for six months.

In October of 2003, Dr. Obolsky, an independent medical examiner hired by IDOT, released plaintiff from workers' compensation leave, finding him able to return to work, but with a daytime restriction. Nurse Murray, another third party medical practitioner hired for workers' compensation purposes, concurred with Dr. Obolsky's recommendations. Instead of reporting to work immediately upon his release from workers' compensation, plaintiff did not return until late November 2003, after his own doctor cleared him to work with no restrictions. By that time, IDOT decided to temporarily transfer plaintiff from the Night

Maintenance yard to the Dan Ryan day yard, where he worked until he was terminated.

Prior to the May 2003 accident, plaintiff submitted a transfer request asking to move from night maintenance to the Dan Ryan day yard permanently.[1] The transfer request form does not inquire as to the applicant's reason for the request and plaintiff did not provide one. Although his previous request was still active and the rules allow only one request per year, plaintiff submitted a new transfer request upon his return to work from leave on November 24, 2003. This time, plaintiff asked for a transfer to the Emergency Traffic Patrol ("ETP"), which plaintiff knew would require him to be on call twenty-four hours a day, seven days a week. In early January 2004, plaintiff submitted two more transfer requests. One was written on the wrong form, but both requested a transfer to the Dan Ryan day yard, just like his pending active request. These requests were denied because plaintiff was not eligible to file a new request until April 14, 2004.[2]

Day yard highway maintainers were required to be on call alternating nights to plow snow during the snow and ice season.

---

[1] Plaintiff made several transfer requests in 2001 and 2002 that do not appear to be at issue in this case.

[2] One final request for a transfer was made on April 16, 2004 – this time to the Bishop Ford Calumet yard. Although it was filed after April 14, 2004, it was denied because at the time of filing, plaintiff was on suspension pending termination and was therefore ineligible for a transfer.

IDOT's snow and ice season runs from approximately October 15 through April 15 every year. When IDOT receives inclement weather reports during the snow and ice season, it notifies the various affected maintenance yards to begin "callout" mode. This triggers the day yards to send the on-call night crew home to rest so they can be called back after hours to ensure twenty-four hour snow plowing is available.

If the weather requires nighttime snow plowing, callouts begin with a first call to an on-call highway maintainer's primary number. After eight rings, if there is no answer at the primary number, the secondary number is called. If there is still no answer, the caller waits five minutes and makes note of the time on a call sheet. After five minutes this process is repeated again, and then one more time for a total of three call cycles before that employee is deemed to have "missed" the callout. The caller then proceeds to call the next person on the list.

To ensure a prompt response to snow and ice callouts, IDOT and plaintiff's union negotiated standard progressive discipline for missed callouts. A written warning is given for the first missed callout, a one day suspension for the second, a five day suspension for the third, and termination for the fourth. Missed callouts are reported to the district personnel office, which arranged pre-disciplinary hearings for the offending employees. At these hearings, employees can have a union representative present and can

provide a written response, documentation, and/or verbally explain why they were unable to answer the phone. If it is determined that the employee had a legitimate reason for failing to answer the callout, there is some discretion in imposing discipline.

It is undisputed that plaintiff failed to answer the phone for four different callouts during the 2003-2004 snow and ice season. The first missed callout occurred on December 15, 2003, the second on January 3, 2004, the third on February 4, 2004, and the fourth on March 13, 2004. Plaintiff received the proscribed progressive discipline after each missed callout – a written reprimand, 1- and 5-day suspensions, and finally termination – despite receiving all the proscribed disciplinary hearings and presenting his various excuses for missing the callouts.

In the months after plaintiff's termination, various prospective new employers sent IDOT employment verification information requests about plaintiff. One of those forms, provided by TLC Companies ("TLC") requested specific medical information in addition to work history. That form included a release, signed by plaintiff on August 9, 2004, expressly authorizing IDOT to disclose the information requested on the form. Carmen Cortese ("Cortese"), IDOT's Personnel Transactions Supervisor, filled out the relevant portions of the TLC form, including the request to "...advise of any injuries, illnesses or prescribed medications." Cortese obtained the requested medical information from IDOT's workman's

compensation department, filled in "Back injuries, post traumatic stress," and returned the form to TLC. (Def.'s SOF Ex. B, Ex. 25.) Five days later Cortese received a message that plaintiff called and was "upset that [IDOT] released some info from his medical file without his permission." (Pl.'s SOF Ex. 5.) Plaintiff contends that when Cortese called him back, he admitted that IDOT fired plaintiff because of his PTSD. But Cortese testified that he merely explained to plaintiff that his medical information was only provided to TLC because plaintiff had signed a release expressly authorizing IDOT to release the requested information. Cortese was not involved with plaintiff's discipline or discharge.

## II.

Summary judgment is proper when the pleadings and discovery, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640 (7th Cir. 2008). All affidavits, opposing or supporting summary judgment, must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. FED. R. CIV. P. 56(e).

I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences

6

in favor of that party. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact remaining for trial. *Id.* The plaintiff "cannot merely allege the existence of a factual dispute to defeat summary judgment." *McPhaul v. Bd. of Comm'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000). Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor. *See id.*

Here, plaintiff argues IDOT violated the ADA by treating him less favorably than other employees because of his disability and by failing to reasonably accommodate him. He also contends IDOT retaliated against him when it terminated him for requesting transfers and accommodations. In order to survive summary judgment on a reasonable accommodation claim, plaintiff must offer evidence that he is a qualified individual with a disability, that IDOT was aware of his disability, and that IDOT failed to reasonably accommodate him. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008).

Plaintiff contends he can also prove disparate treatment discrimination by either the direct or indirect methods. Under the direct method, a plaintiff must demonstrate, by direct evidence or a "mosaic" of circumstantial evidence, "triable issues as to

7

whether discrimination motivated the adverse employment action." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (citation omitted). A plaintiff who lacks direct evidence of discrimination may proceed under the indirect method by first establishing a *prima facie* case. To do so plaintiff must show that: (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). If he can do this the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The plaintiff must then show a genuine dispute of material fact that the defendant's reasons are pretextual in order to survive summary judgment. *Id*.

The same burden shifting requirements pertain to plaintiff's claim for retaliation if he can first show (1) he engaged in protected activity, (2) he was performing his job satisfactorily, and (3) he was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007).

III.

Both reasonable accommodation and disparate treatment claims require plaintiff to show he was a qualified individual with a disability. In other words, plaintiff must show that he was capable of performing the essential elements of his job, with or without accommodation, "as configured by the employer; not his own conception of the job." *Hanson v. Henderson*, 233 F.3d 521, 524 (7th Cir. 2000). IDOT claims that highway maintenance workers must be available twenty-four hours a day during the snow and ice season to ensure the roads are plowed and safe for travel. Accordingly, IDOT argues that if plaintiff can not work nights at all, as he claims in his response brief, he is not a "qualified" individual with a disability.

To determine whether a job function is essential, a number of factors are considered, including "the employer's judgment, written job descriptions, the amount of time spent on the function, the consequences of not requiring the function, and the work experiences of those performing the job." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). Here, the evidence shows these factors are neutral or weigh in favor of finding that nighttime snow plowing is an essential element of a highway maintainer's job. First, there is no dispute that all day yard maintainers were required to be on-call alternating nights to plow snow during the snow and ice season. *See DePaoli v. Abbott Labs*, 140 F.3d 668,

9

674 (7th Cir. 1998)(Although courts looks to see if the employer actually requires all employees in a particular position to perform the allegedly essential function, they avoid second-guessing the employer's judgment). There is no evidence of a single exception to this rule.

Plaintiff does not provide a written description of the job or testimony from other highway maintainers that supports his contention that nighttime snow plowing was not essential. Instead he points to Dr. Obolsky's opinion clearing plaintiff to return to work from workers' compensation leave with a daytime restriction. This evidence, plaintiff argues, suggests Dr. Obolsky did not find nighttime work essential to the job. Additionally, plaintiff argues that because the other independent medical practitioner, Nurse Murray, agreed with Dr. Obolsky's opinion, she too must have believed nighttime snow plowing work was not essential.

But Dr. Obolsky was not an IDOT employee and his task was narrow. He was asked to determine whether plaintiff was medically cleared to return to his old job at the Night Maintenance yard - the only job he ever held at IDOT prior to his accidents and rehabilitation. Contrary to plaintiff's contentions, there is no indication from the report that Dr. Obolsky considered, or was even aware of, the seasonal requirements of day yard highway

maintainers.³ Since plaintiff's pre-accident night shift work was stationary Night Maintenance yard work, and not snow plowing, the only reasonable interpretation of Dr. Obolsky's concerns regarding plaintiff's "return to the night shift" is a concern about his return to the Night Maintenance yard.

Similarly, Nurse Murray's concurrence with Dr. Obolsky's opinion and Ms. Nagakura's emails discussing plaintiff's return to work from leave do not indicate whether nighttime snow plowing during inclement weather was essential, but rather debate whether plaintiff should return to the Night Maintenance yard work he was performing prior to the accidents. While this evidence may show IDOT considered allowing plaintiff to transfer out of a permanent night maintenance position, it does not indicate that nighttime snow plowing was not essential to a day yard highway maintainer's job.

Alternatively, plaintiff argues that since he was only subject to snow plowing call-outs at night 25% of the time (every other day for half of the year), night plowing must not be essential. But the amount of time required to do a particular function of a job

---

³ Moreover, other sections of Dr. Obolsky's report are directly contrary to plaintiff's position. For example, Dr. Obolsky states that plaintiff could perform the essential elements of his job with one exception: "Mr. Butler's psychiatric symptoms are non-impairing from performance of essential functions of his job *except that he is limited to day time employment*." (Pl.'s Ex. 1, p.5)(emphasis added). This statement suggests Dr. Obolsky did consider nighttime employment essential to plaintiff's job.

11

does not determine its importance. *See Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir. 2001)("a function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential.") And IDOT was not required to make other highway maintainers take plaintiff's night call during snow and ice season. *See Jay v. Internet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (an employer is not required to shuffle job responsibilities amongst employees to create a position to accommodate an employee's disability). Thus, plaintiff has failed to produce sufficient evidence to establish a genuine issue of material fact as to his ability to perform the essential functions of his job, with or without reasonable accommodation. As a result, plaintiff's disparate treatment and reasonable accommodation claims necessarily fail. But they also fail for a variety of other reasons.

First, plaintiff plainly admits that working nights did not bother him, so long as the work did not require him to remain stationary. (*See* Def.'s SOF 54). In fact, when plaintiff returned to work in November 2003, he expressly volunteered for snow and ice duty and even requested a permanent transfer to the ETP, knowing full well that both jobs would require him to be on-call and work nights. (*See* Def.'s SOF 23, 45). Assuming plaintiff actually made the request to be relieved from nighttime snow plowing duties, and I cannot find any evidence showing that this specific request was

12

made, his request was not "reasonable" because it was not tailored to address plaintiff's complaints. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1116 (7th Cir. 2001)(employer not obligated to provide everything plaintiff requests). In other words, IDOT was not required to give plaintiff special treatment and make other highway maintainers cover his night shifts, when he only complained about doing stationary work at night – not mobile work like plowing snow. *See Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1067-68 (7th Cir. 2008)(special treatment not required); *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 867 (7th Cir. 2005) ("Accommodations which require special dispensations and preferential treatment are not reasonable under the ADA.")

The only support provided by plaintiff for his reasonable accommodation claim is his contention that Dr. Obolsky, Nurse Murray, and Ms. Nagakura all felt he "should be accommodated." (Resp. p. 11). But as noted above, snow plowing was never mentioned by any of these parties and was not an issue at the time of his workers' compensation evaluation. Rather, the focus of the evidence cited is by plaintiff is whether he could or should return to work in the Night Maintenance yard, where he would have to perform the stationary nighttime work he feared.[4]

---

[4] To the extent this evidence supports reasonable accommodation in the form of a permanent transfer to one of the day yards, plaintiff fails to argue this in his brief. Regardless, there is no evidence indicating that a permanent day yard position was available. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th

With respect to plaintiff's disparate treatment claim, which appears from his response to be based only on termination, plaintiff submits that his own uncorroborated and disputed testimony relaying why Cortese believed plaintiff was fired four months after his termination is sufficient evidence of discrimination under the direct method. The undisputed evidence shows that Cortese was not involved in plaintiff's disciplinary proceedings or the decision to terminate him. Plaintiff contends that this lack of direct participation is irrelevant, and speculates that Cortese could have known the reason plaintiff was fired because Cortese works with IDOT's personnel director, who was involved with plaintiff's termination, on other matters. Unfortunately for plaintiff, self-serving testimony is not enough to support his claims on summary judgment if that testimony is based on "speculation, intuition, or rumor." *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Since Cortese had no direct knowledge of what occurred in plaintiff's case, plaintiff's disputed self-serving testimony concerning what Cortese said about

---

Cir. 2001)(it is plaintiff's burden to show a vacant position exists). Moreover, the evidence shows plaintiff's transfer request was not denied, but rather remained open, pending availability. Regardless, Dr. Obolsky's recommendation was essentially followed. When plaintiff returned to work in November 2003, he was temporarily placed at the Dan Ryan day yard, (not the Night Maintenance yard), where he stayed for the remainder of his employment.

14

the termination, four months after the fact, can only be based on speculation, intuition, or rumor, and is not sufficient direct method evidence of disparate treatment to survive IDOT's motion.

Plaintiff fares no better under the indirect method because he does not provide any evidence that he was performing his job satisfactorily or that similarly situated highway maintainers were not subjected to the same discipline for missing callouts. Instead, plaintiff argues that IDOT's reasons for firing him were pretext, an inquiry that comes later and focuses on "whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).

To demonstrate pretext, plaintiff must show that IDOT's articulated reason for firing him (1) had no basis in fact; (2) did not actually motivate his discharge; or (3) was insufficient to motivate his discharge. *Davis*, 368 F.3d at 784 (citing *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002)). Plaintiff's pretext argument also relies on his disputed testimony relaying what Cortese told him about his termination. But as already discussed, this evidence alone is not enough to demonstrate a material issue of fact such that plaintiff can withstand summary judgment. *See Payne*, 337 F.3d at 773(self-serving testimony cannot support claims on summary judgment if testimony is based on

speculation, intuition, or rumor). Accordingly, plaintiff's disparate treatment fails for these additional reasons.

Finally, with respect to plaintiff's retaliation claim, plaintiff argues that he made repeated requests for transfer and accommodation due to his disability, and that he was disciplined and terminated in retaliation for making those requests. Assuming plaintiff's requests constitute protected activity, plaintiff again unconvincingly relies on testimony concerning Cortese's disputed statement to sustain his retaliation claim. Moreover, plaintiff completely fails to present evidence and argument supporting certain elements of his *prima facie* case, namely, that he was performing his job satisfactorily, and that he was disciplined and terminated for missed callouts while other similarly situated employees who did not engage in protected activity were not. Without any evidence or support for his *prima facie* case, plaintiff cannot sustain a claim for retaliation.

V.

For the foregoing reasons, defendant's motion for summary judgment is granted.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Date: October 30, 2009